STEWART, J.
|Rn this writ grant to docket, the applicant, Timothy D. Williams, was charged by bill of information with conspiracy to possess 400 grams or more of cocaine, a violation of La. R.S. 40:967(F)(l)(c) and La. R.S. 14:26. Williams filed a motion to suppress which the trial court denied. He requested reconsideration which the trial court again denied. Williams now seeks review of the trial court’s ruling. For the following reasons, we affirm the trial court’s ruling.
FACTS
On July 21, 2009, Corporal Ben Raymond, of the Shreveport Police Department’s Mid-Level Investigation Unit, was advised by a “highly reliable and trustworthy” confidential informant (hereinafter referred to as “C.I.”) that Timothy Williams (hereinafter referred to as the “defendant”) and Waco Collins were selling large quantities of cocaine and marijuana from Apartment #20-294 in the Stone Vista Apartments located at 541 East Stoner Avenue in Shreveport (hereinafter referred to as the “apartment”). According to the C.I., the apartment used by the defendant to sell and store narcotics and drugs was occupied by his brother and sister-in-law, Deon and Angie Williams, and their children.
The C.I. had seen “numerous” weapons in the apartment on several occasions. Raymond showed the C.I. pictures of the defendant and Collins, and the C.I. positively identified them as “Timothy” and “Waco.” The C.I. also described the defendant’s vehicle as a white Ford Explorer and the location of his home at 650 Easy Street in Shreveport, Louisiana. Raymond 12had previously seen the white Explorer parked at the Easy Street address on more than one occasion during the month of May 2009.
Based on that information, Raymond had the C.I. arrange a purchase on July 21, 2009. The C.I. contacted the defendant and told him they would meet at “the spot.” The C.I. was provided with official, previously photocopied “buy funds” issued by the Shreveport Police Department. He then drove to the apartment while Raymond followed in another vehicle. Another agent had the apartment under surveillance and observed the defendant’s vehicle parked at the complex near building 20 where the apartment was located. The C.I. was observed entering the apartment and, after a few minutes, leaving the apartment. Raymond and the C.I. traveled to a prearranged location where Raymond took possession of the plastic bag containing cocaine. The C.I. was searched and no other drugs or contraband were found. The C.I. informed Raymond that he purchased the ounce of cocaine from the defendant for $1,100.00. While conducting the transaction, the C.I. related that he saw more cocaine in the apartment, approximately 7-8 ounces, and numerous firearms. Deon and Angie Williams and their children were present when the transaction took place.
On July 28, 2009, the C.I. conducted a second transaction, with a procedure similar to the first transaction being followed. The C.I. was given “buy funds” to purchase the cocaine. The C.I. was observed entering and leaving the apartment. At the prearranged meeting location, the C.I. turned over approximately one ounce of cocaine purchased with the buy money provided by Raymond. The C.I. informed *953 Raymond that he had Rheard the defendant stating that he was expecting more narcotics to be delivered to the apartment later that day. The police report states that a search warrant was obtained following this second transaction. However, the record does not contain a copy of that search warrant. Additionally, none of the reports contained in the record provide any information on whether or not the referenced warrant was executed on the apartment.
On September 29, 2009, members of Shreveport Police Department’s narcotics unit or the “MLIU” were conducting surveillance on the apartment because it was believed that there was ongoing drug-related activity at that location. According to Raymond’s testimony during the motion to suppress hearing, after the two initial purchases from the defendant, the C.I. had been unable to make contact for additional purchases. Raymond attempted to use another C.I. in August 2009, to attempt a purchase from the defendant at the apartment. However, that effort also fell short. Because the MLIU had been unable to make further purchases, surveillance was set up on September 29, 2009, on the apartment.
The defendant, Collins, and Timothy Johnson were seen leaving the apartment. The officers conducting the surveillance contacted a patrol officer, Corporal Colvin, and requested that a traffic stop be made on the vehicle once he observed a traffic infraction. The details of the traffic stop were related by Colvin during the suppression hearing for Collins.[1]
^Following the traffic stop, the defendant was arrested for outstanding warrants, and Collins was arrested for an open container violation. Both were transported to the parish jail. When Collins was removed from the patrol car, crack cocaine was found under his shoe outside of the car. This information was related to Raymond, who applied for a search warrant several hours later. The affidavit for the warrant included information about the discovery of the narcotics from Collins’ arrest as well as information based on the two previous buys made by the C.I. The warrant was executed shortly after it was obtained. The search of the apartment led to the seizure of approximately 26.5 ounces of powder cocaine, approximately 31 grams of crack cocaine, a digital scale with powder residue on it, and documents with the defendant’s name on them. Raymond expressed that the documents with the defendant’s name on them showed proof that he had “associations with this apartment.”
Anthony “Deon” Williams (hereinafter referred to as “D. Williams”), the defendant’s brother, and his sister-in-law, Angela “Angie” Williams (hereinafter referred to as “A. Williams”), were in the apartment with their children when the warrant was executed. The couple was interviewed and D. Williams reported that his brother, the defendant, had come to the apartment the day before and left a bag in a closet in the apartment. D. Williams indicated he had not looked in the bag but he suspected it contained drugs. A. Williams also reported that the defendant left the bag in the house and she had seen him taking something from the bag, but she was |fiunable to see the object he removed. A. Williams stated that she did not know what was in the bag.
During the search, two bags containing large quantities of powder and crack cocaine were discovered in a bedroom closet. *954 A digital scale was discovered in the kitchen near the stove, and white powder residue was observed on the stove burners. According to Raymond, this was an indication that someone had been “making crack cocaine from the powder cocaine.”
Subsequent to the search, the defendant was charged by bill of information with conspiracy to possess cocaine (400 grams or more), a violation of La. R.S. 40:967(F)(l)(c) and La. R.S. 14:26; and simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2.[2] Waco Collins, a co-defendant, was charged by separate bill of information with conspiracy to possess cocaine (400 grams or more), a violation of La. R.S. 40:967(F)(l)(c) and La. R.S. 14:26, and possession of cocaine with intent to distribute, a violation of La. R.S. 40:967(A)(1).
The defendant and Collins filed motions to suppress the evidence. Collins filed a motion to suppress the evidence seized during a search incident to an arrest following a traffic stop. The trial court denied the motion to suppress and Collins sought writs with this Court. In State v. Collins, supra, this Court granted the writ, reversed the trial court’s ruling and ordered all evidence seized in conjunction with the traffic stop | (-.suppressed. Following the ruling in Collins, the defendant filed a motion to reconsider the trial court’s prior denial of his motion to suppress, and a hearing was held June 27, 2011.
Raymond testified during the hearing on the motion to suppress and related the information regarding the two C.I. purchases, the surveillance of the defendant and the search that led to the discovery of the drugs at the apartment. Following arguments by the state and defense, the trial court ruled on the motion to suppress. The trial court opined that there were several issues involved in the case. The initial question was whether or not the portion of the affidavit pertaining to the stop that was ruled illegal could be separated from the affidavit and still make a showing of probable cause sufficient for issuance of a warrant. The trial court ruled that, based on the two C.I. purchases, there would have been sufficient probable cause to issue the warrant. The trial court concluded there was sufficient information in the affidavit, after excising the information pertaining to the traffic stop, to substantiate probable cause for the issuance of a search warrant. Following this conclusion, the trial court determined that the issue to be decided would be whether or not the delay between the sales and the application for the search warrant (approximately 62 days) would render the information contained in the affidavit stale or untimely.
In reviewing the issue of timeliness on the request for the warrant based on information more than 60 days old, the trial judge found that the information in the warrant supported the theory that the defendant was operating an ongoing enterprise. The trial judge considered the significant 17quantities of cocaine observed in the apartment during the first purchase (an additional seven or eight ounces of cocaine) and that the defendant indicated additional cocaine was expected on the day of the second purchase. Further, the trial judge considered the fact that weapons were observed in the apartment and other adults and children were present during *955 the purchases. The defendant now seeks review of the trial court’s ruling.
DISCUSSION

Pretextual Stop

In this writ grant, the defendant is asserting three assignments of error. In the first assignment of error, he asserts that there was a pretextual traffic stop to look for narcotics, and that the police officer who made the stop testified at the suppression hearing that the probable cause for the stop was an illegal lane change. He contends that since a video of the stop contradicts the officer and shows no probable cause for the stop, all evidence seized as a result of the stop should be suppressed. More specifically, the defendant urges that evidence derived from that pre-textual stop should be suppressed as the stop was illegal and any evidence obtained should be considered fruit of the poisonous tree.
La. C. Cr. P. art. 703(D) provides:
On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
When the appellate court reviews a trial court’s ruling on a motion to suppress, based on findings of fact, great weight is placed upon the trial Rcourt’s ruling on a motion to suppress because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Crews, 28,153 (La.App. 2 Cir. 05/08/96), 674 So.2d 1082, 1084, citing State v. Jackson, 26,138 (La.App. 2 Cir. 08/17/94), 641 So.2d 1081. Accordingly, we review the district court’s ruling on a motion to suppress under the manifest error standard for factual determinations, as well as credibility and weight determinations, while applying a de novo review to its findings of law. State v. Hemphill, 41,526 (La.App. 2 Cir. 11/17/06), 942 So.2d 1263, 1271, writ denied, 2006-2976 (La.3/9/07), 949 So.2d 441, citing State ex rel. Thibodeaux v. State, 2001-2510 (La.03/08/02), 811 So.2d 875.
A trial court’s denial of a motion to suppress is afforded great weight and will not be set aside unless a preponderance of the evidence clearly favors suppression. State v. White, 39,681 (La.App. 2 Cir. 5/11/05), 903 So.2d 580; State v. Normandin, 32,927 (La.App. 2 Cir. 12/22/99), 750 So.2d 321, writ denied, 00-0202 (La.9/29/00), 769 So.2d 550.
Jurisprudence has established that officers may make an initial traffic stop after observing a traffic infraction even if the purpose of the stop is to investigate for CDS violations. State v. Arnold, 34,194 (La.App. 2 Cir. 12/6/00), 779 So.2d 840; State v. Franklin, 31,068 (La.App. 2 Cir. 09/23/98), 719 So.2d 578, writ denied, 98-2982 (La.03/19/99), 739 So.2d 781, citing Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
|flIn this case, the issue regarding the initial stop of the vehicle in which the defendant was a passenger was fully reviewed by this court in State v. Collins, supra. The defendant is correct in his assertion that evidence derived from the search following the stop should be suppressed. As noted by the defendant in his brief, this court has previously ruled that the evidence obtained as a result of the illegal traffic stop should be suppressed.
The facts of the illegal stop referenced by the defendant are succinctly outlined in State v. Collins, supra. The stop of the vehicle, in which the defendant was a pas *956 senger, was based on a traffic stop for a violation that we later learned the reporting/arresting officer did not observe. The patrol officer acted at the behest of the narcotics officers, and based on the narcotics officers’ observation of an alleged violation, a stop of the vehicle was made. As stated previously, all occupants of the vehicle, which included the defendant, Johnson, and Collins, were eventually arrested.
Following the trial court’s denial of Collins’ motion to suppress, this court viewed the dashboard camera recording from the arresting officer’s patrol vehicle, and concluded that the traffic officer would have been unable to actually see the traffic violation which was alleged to be the reason for the initial traffic stop. Following that finding, this Court determined the evidence derived from the illegal stop was inadmissible, and any evidence obtained from the stop should be considered fruit of the poisonous tree. However, this finding is not determinative as to whether the evidence seized from the apartment is admissible.
[ ^Search Warrant
In defendant’s second assignment of error, he suggests that since the evidence gleaned from the traffic stop was listed in an affidavit for the search warrant to search the apartment, all evidence obtained from the apartment should be suppressed under the exclusionary rule as fruits of the poisonous tree. He argues that the warrant, without evidence and information obtained from the traffic stop, does not establish probable case.
In the third assignment of error, the defendant alleges that the search warrant was stale, and that the evidence obtained through it should be suppressed under the exclusionary rule as fruits of the poisonous tree. Since these two assignments relate to the validity of the search warrant, we will discuss them together.
The defendant believes that once the facts surrounding the illegally seized evidence are removed from the warrant affidavit, there would be insufficient facts and/or information contained in the application to justify a warrant being issued. In the alternative, the defendant argues that the information of the prior sales would be “stale” and as such, a warrant should not have been issued.
La. C. Cr. P. art. 162 implements the requirements of the federal and state constitutions regarding the issuance of search warrants:
A. A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
C. A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure.
_[nThe warrant should be tested in a commonsense and realistic manner without technical requirements of elaborate specificity. State v. Stapleton, 40,772 (La.App. 2 Cir. 3/8/06), 924 So.2d 453; State v. Huffman, 419 So.2d 458 (La.1982).
Probable cause to search exists when the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place. State v. Shumaker, 41,547 (La.App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied, 07-0144 (La.9/28/07), 964 So.2d 351. A search warrant must establish a probable continuing nexus between the place sought to be searched and the property sought to be seized. State v. Casey, 99-0023 (La.01/26/00), 775 So.2d 1022, 1028, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 *957 L.Ed.2d 62 (2000). Further, the affidavit must contain, within its four corners, the facts establishing the existence of probable cause for issuing the warrant. Id.
Probable cause for the issuance of a search warrant does not involve certainties of proof beyond a reasonable doubt, or even a prima facie showing, but rather involves probabilities of human behavior as understood by persons trained in law enforcement and based on the totality of the circumstances. State v. Shumaker, supra. The affidavit need not eliminate all possible innocent explanations of the described behavior. State v. Loera, 530 So.2d 1271 (La.App. 2 Cir.1988), writ denied., 536 So.2d 1252 (La.1989).
The making of material and intentional misrepresentations to a magistrate involves a fraud upon the courts and will result in the | ^invalidation of the warrant and suppression of the items seized. State v. Byrd, 568 So.2d 554 (La.1990). If the misrepresentations or omissions are inadvertent or negligent, the warrant will be retested for probable cause after supplying that which had been omitted or striking that which had been misrepresented. Id.
A search warrant will withstand an attack of “staleness” if the facts contained in the affidavit have not become so attenuated with the passage of time so as to render those supporting facts nonexistent. Stated another way, “the proof (of probable cause) must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.” State v. Thompson, 354 So.2d 513 (La.1978) (internal citations omitted).
A warrant may become stale if facts and circumstances at the time of its execution show that probable cause no longer exists. Thus, staleness is only an issue when the passage of time makes it doubtful that the object sought in the warrant will be at the place where it was observed. State v. Casey, supra.
In State v. Tate, 407 So.2d 1133 (La.1981), which involved the theft of a motorcycle, the court determined that even though two and one-half months elapsed between earlier observations of the affiant at the storage room maintained by the defendant, and the issuance of a search warrant to search the storage room, it did not render the search warrant stale.
Based on the record before this Court, the trial court correctly issued the warrant for the search of 541 East Stoner Street, Apt. 20-294. Based on Lathe previous sales, the ongoing surveillance, as well as the discovery of narcotics following the arrest of Collins, the trial court was provided with sufficient facts within the four corners of the warrant for it to reasonably conclude that there was a nexus between the apartment and the narcotics sales and storage. Further, it was reasonable for the trial court to conclude that evidence could be found in the apartment at the time the warrant was issued and/or executed.
However, the warrant application also contained evidence that should not have been considered when the warrant was issued. The proper remedy for curing this defect is to excise the information pertaining to the illegal arrest and then review the application anew for a probable cause determination. The trial court properly reached this conclusion.
In State v. Culotta, 343 So.2d 977 (La.1976) at p. 982, the supreme court held:
We do not believe that the scope of the constitutional provision was necessarily intended to exclude from the trial evidence otherwise untainted, secured through a search warrant, because part *958 of the showing made in the affidavit used to secure the warrant is based upon evidence illegally obtained from third persons and inadmissible, if objected to at trial, against either them or the accused. (If the sole basis of the affidavit was such illegally-secured evidence, our conclusion might well be different.)
The warrant application detailed the two purchases, as well as the CJ.’s observation of additional narcotics and weapons in the apartment on more than one occasion. These facts, standing alone, sufficiently establish probable cause for the trial court to conclude that there was a fair probability that drugs and or weapons would be found in that apartment.
114The defendant argues that the information contained in the warrant application is “stale,” since the drug transactions occurred more than two months prior to the search warrant being issued. We find that the passage of time, slightly over 60 days, does not render the information based on the two previous independent sales insufficient to support a finding of probable cause. The trial court determined that “an ongoing enterprise” existed based on the totality of the circumstances, which included continued sales and surveillance. This determination is a reasonable conclusion. These facts established a probable continuing nexus between the place, the apartment, sought to be searched and the property sought to be seized, which included narcotics, evidence of drug transactions, weapons, and mail addressed to the defendant.
Affording great weight to the trial court’s determinations, there is nothing in the record to suggest that the trial court erred in its ruling. Accordingly, we find assignments of error two and three merit-less.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s ruling finding the evidence seized pursuant to the warrant, from the apartment located at 541 East Stoner Street, admissible in proceedings against the defendant, Timothy D. Williams.
AFFIRMED.

. For a detailed statement of the facts and procedural history of that case, please refer to this court’s previous opinion in State v. Collins, 45,979 (La.App.2d Cir.12/22/10), 87 So.3d 857, writ denied, 2011-0168 (La.3/25/11), 61 So.3d 667.

. Following the trial court’s ruling on the motion to suppress, the court took up the defendant’s motion to quash the bill of information based on the improper joinder of the two charges. The state entered a nolle prose-qui as to Count Two — simple burglary of an inhabited dwelling, and rebilled the defendant in a separate case. The matter is currently pending and scheduled for a status hearing on March 12, 2012.