NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-287

STATE OF LOUISIANA

VERSUS

TERRY LEN JOSEPH

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 11-239856
HONORABLE LORI ANN LANDRY, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and Charles G. Fitzgerald, Judges.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

Paula Corley Marx
Louisiana Appellate Project
P. O. Box 82389
Lafayette, LA 70598-2389
(337) 991-9757
COUNSEL FOR DEFENDANT-APPELLANT:
    Terry Len Joseph

**Hon. M. Bofill Duhe**
**District Attorney, Sixteenth Judicial District**
**W. Claire Howington**
**Assistant District Attorney**
**300 Iberia St., Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**PICKETT, Judge.**

## FACTS

On the evening of January 1, 2011, the defendant, Terry Len Joseph, was driving westbound on Louisiana Highway 96 in St. Martin Parish. His passenger was the victim, Anessia Baldwin. He was driving at approximately eighty-six miles per hour when he reached a curved area, exited the roadway into a ditch to his left, struck a culvert, then three trees. The truck rotated so that when it finally came to a stop, it was facing east. The pair was trapped in the vehicle. A paramedic who arrived on the scene found that Miss Baldwin was dead. Emergency personnel extricated the defendant from the truck and airlifted him to a hospital in Lafayette. Testing revealed his blood-alcohol level to be 0.228.

On February 18, 2011, the state filed a bill of information charging the defendant with vehicular homicide, a violation of La.R.S. 14:32.1, and possession of weapon by a convicted felon, a violation of La.R.S. 14:95.1. The district court held a number of pretrial hearings, including a motion to suppress hearing on November 25, 2013. As will be discussed later, the court denied the motion.

The defendant was tried only on the vehicular homicide charge. The parties began selecting a jury on March 6-7, 2018. The jury began hearing evidence on March 8. On March 10, it found the defendant guilty as charged.

On June 14, 2018, the district court sentenced the defendant to twenty years at hard labor, with ten years suspended and five years of supervised probation. There were also several conditions of probation. The defendant filed a written motion to reconsider sentence, which the district court denied on July 6, 2018.

The defendant now appeals his conviction and sentence, assigning three errors.

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find two errors patent. Additionally, the court minutes of sentencing require correction.

First, when imposing the defendant's conditions of probation, the trial court stated, "All of the usual conditions of probation will be met as well as the usual conditions of parole." Although the court did not impose any specific conditions of parole, it imposed the "usual conditions." The trial court lacks the authority to impose conditions of parole. *State v. Franco*, 08-1071 (La.App. 3 Cir. 4/1/09), 8 So.3d 790, *writ denied*, 09-1439 (La. 2/12/10), 27 So.3d 843; *State v. Kotrla*, 08-364 (La.App. 3 Cir. 11/5/08), 996 So.2d 1224. Accordingly, we amend the defendant's sentence by deleting the imposition of the "usual conditions of parole" and instruct the trial court to make an entry in the court minutes reflecting this amendment.

Next, the trial court imposed a $5,000.00 fine "to be paid during the period of time that [the defendant] is on probation at a time that we will set at a later date depending on his ability and a new hire." The case must be remanded for the establishment of a payment plan. In *State v. Arisme*, 13-269, pp. 3-4 (La.App. 3 Cir. 10/9/13), 123 So.3d 1259, 1262, this court stated:

> In *State v. Wagner*, 07-127, pp. 7-8 (La.App. 3 Cir. 11/5/08), 996 So.2d 1203, 1208, this court held in pertinent part:
>
>> When the fines and costs are imposed as a condition of probation, but the trial court is silent as to the mode of payment or the trial court attempts to establish a payment plan, this court has required a specific payment plan be established. *See State v. Theriot*, 04-897 (La.App. 3 Cir. 2/9/05), 893 So.2d 1016 (fine, court costs, and cost of prosecution); *State v. Fuslier*, 07-572 (La.App. 3 Cir. 10/31/07), 970 So.2d 83

(fine and costs); *State v. Console*, 07-1422 (La.App. 3 Cir. 4/30/08), 981 So.2d 875 (fine and court costs).

We view this procedure as no different from payment plans for restitution. *See State v. Dean*, 99-475 (La.App. 3 Cir. 11/3/99), 748 So.2d 57, *writ denied*, 99-3413 (La. 5/26/00), 762 So.2d 1101 (restitution only), *State v. Reynolds*, 99-1847 (La.App. 3 Cir. 6/7/00), 772 So.2d 128 (restitution, fine, and costs), *State v. Stevens*, 06-818 (La.App. 3 Cir. 1/31/07), 949 So.2d 597 (restitution, fine, court costs, and reimbursement to Indigent Defender Board), and *State v. Fontenot*, 01-540 (La.App. 3 Cir. 11/7/01), 799 So.2d 1255 (restitution, court costs and payments to victim's fund, Indigent Defender Board, and District Attorney).

We, therefore, remand this case to the trial court for establishment of a payment plan for the fine, noting that the plan may either be determined by the trial court or by Probation and Parole, with approval by the trial court. *See Stevens*, 949 So.2d 597.

Similarly, the trial court's ordering the payment to the crime lab fund during the period of probation is an insufficient payment plan. We also remand the case to the trial court for establishment of a payment plan for these costs, noting that the plan may either be determined by the trial court or by Probation and Parole, with approval by the trial court. *See Stevens*, 949 So.2d 597.

This issue has been similarly resolved in other cases. *See State v. LaCombe*, 09-544 (La.App. 3 Cir. 12/9/09), 25 So.3d 1002, and *State v. Snelling*, 09-1313 (La.App. 3 Cir. 5/5/10), 36 So.3d 1060, *writ denied*, 10-1301 (La. 12/17/10), 51 So.3d 16. Accordingly, we remand this case to the trial court for the establishment of a payment plan for the fee, noting that the plan may either be determined by the trial court or by the Department of Probation and Parole with approval by the trial court. *See Stevens*, 949 So.2d 597.

Accordingly, while we affirm the conviction and sentence, we remand to the trial court for the establishment of a payment plan for the fine, court costs, and payment to the Public Defender's Office imposed as conditions of probation. The payment plan may either be determined by the trial court or by the Office of Probation and Parole with approval by the trial court.

Thus, the defendant's case is remanded to the trial court to establish a payment plan for the fine imposed as a condition of probation. The payment plan

may be determined by either the trial court or by the Office of Probation and Parole with approval by the trial court.

Finally, the court minutes of sentencing state that the defendant is to make "reasonable reparation or restitution to the aggrieved party for damage or loss caused by the offense in an amount to be determined by the court." The sentencing transcript does not indicate that the court imposed restitution. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So2d 365, 369, *writ denied*, 00-2051 (La.9/21/01), 797 So.2d. 62. Accordingly, the trial court is ordered to amend the court minutes of sentencing to delete this provision requiring the payment of restitution.

## ASSIGNMENTS OF ERROR

1. The State failed to meet its burden of proof that Terry Len Joseph was guilty of vehicular homicide beyond a reasonable doubt.

2. A. The trial court erred in imposing an excessive sentence in this vehicular homicide case. The death of Terry Len Joseph's friend in the accident was a tragic, devastating loss for him, as well as the victim's family. A lengthy sentence serves no useful purpose under these circumstances.

A twenty-year sentence subjects Terry Len Joseph, a dedicated father and hard worker, to cruel, excessive and unusual punishment in violation of the U.S. and Louisiana constitutions and statutory law.

B. The trial court failed to give sufficient weight to factors in mitigation in particularizing the sentence to this offender, thus the sentence violates the guidelines of La. C.Cr.P. Art. 894.1.

3. The trial court erred in denying the motion to suppress the statement of Terry Len Joseph which was not freely and voluntarily given due to his medical condition and the circumstances at the time.

4. The maximum period of probation for an offender such as Terry Len Joseph is three years, thus the trial court erred in imposing a five-year period of probation.

4

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the defendant argues that the trial evidence was insufficient to support his conviction for vehicular homicide. He states, "The issue was whether the accident was caused by inattention unrelated to the consumption of alcohol." The general analysis for insufficiency of the evidence claims is well-established:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The elements of the crime are set forth in La.R.S. 14:32.1; at the time of the crime, it stated in pertinent part:

> A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists and such condition was a contributing factor to the killing:
>
> (1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
>
> (2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

5

(3) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964.

(4) The operator is under the influence of alcoholic beverages.

(5)(a) The operator is under the influence of a combination of alcohol and one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription.

The defendant acknowledges that the evidence showed his blood-alcohol level exceeded the legal limit and that he used "bad driving tactics," but he argues the state must show that his intoxication was "a contributing factor" regarding the victim's death. More specifically, he argues the record shows that he and the victim were not fully dressed; thus, he suggests some sort of sexual activity may have been taking place and this distracted him. Essentially, he is arguing the evidence suggests sexual activity, rather than alcohol consumption, distracted him and caused the accident, and thus there is reasonable doubt regarding his guilt.

He acknowledges that he was speeding and was inattentive. He argues it would be appropriate for this court to vacate his conviction for vehicular homicide and enter a conviction for the responsive verdict of negligent homicide.

The state notes the supreme court's analysis from 2019:

The plain text of the statute now requires the state to prove four things: 1) the killing of a human being; 2) caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle; 3) a prohibited degree of intoxication; and 4) a link between the intoxication and the killing.

Most importantly, the link between the intoxication and the killing does not have to be a "proximate cause," but simply a "contributing factor."

A "proximate cause" is one that directly produces an event and without which the event would not have occurred. See Black's Law Dictionary (10th ed. 2014). By contrast, a "contributing cause" is a factor that - though not the primary cause - plays a part in producing a result. See id. A "factor" is an agent or cause that contributes to a particular result. See id.; see also "Factor," American Heritage

6

Dictionary (5th ed. 2019) ("One that actively contributes to an accomplishment, result, or process"). Therefore, the 2008 amendment was a subtle but important change for vehicular homicide cases.

Nonetheless, we fully agree with the Court's statement in *Taylor* that "[t]he evident purpose of the vehicular homicide statute is to curb traffic fatalities caused by the consumption of alcohol." *Taylor*, 463 So.2d at 1275. Thus, we find it is reasonable to hold intoxicated drivers to a higher standard of care in order to discourage that behavior and effectuate the legislative intent.

To further clarify, this interpretation of the statute in no way absolves the state from its burden of proving every element of vehicular homicide beyond a reasonable doubt. Just as with other offenses, however, the exact nature of the proof the state is required to submit will vary on a case-by-case basis. In some instances, the state likely would have to introduce expert testimony concerning the probable physiological effects of the intoxicant ingested by the defendant, especially in a case involving a prohibited substance other than alcohol. In other situations--perhaps where a defendant has an exorbitant BAC, loses consciousness while driving, and causes an accident as a result--proof of the BAC and associated acts would almost certainly prove sufficient.

*State v. Leger*, 17-2084, pp. 10-11 (La. 6/26/19), 284 So.3d 609, 615-16 (footnote omitted).

The state also cites a recent majority opinion by this court:

The fact of the presence of these drugs in the defendant's blood and urine does not allow the jury to assume the defendant was impaired or that the presence of those substances was a contributing factor in the accident. The jury can, however, consider the surrounding circumstances, including the reckless manner in which the vehicle was being operated, the speed at which the vehicle was being operated, and the defendant's inability to respond to a vehicle slowing down in her lane. The jury knew the vehicle immediately behind the defendant's vehicle, which was admittedly operating over the speed limit, was able to come to a complete stop to avoid the accident. The jury heard eyewitness testimony as to how the accident occurred. When viewing the evidence under the *Jackson* standard, there is sufficient evidence to support the jury's conclusion that the drugs impaired her ability to respond and was thus a contributing factor in the accident which took Mr. Johnson's life.

*State v. Trahan*, 19-873, p. 24-25 (La.App. 3 Cir. 9/23/20), 304 So.3d 966, 978.

The jury could rationally conclude that the defendant's intoxication was a contributing factor in the accident. Although there was evidence that the victim

7

was partially undressed, the record does not support or establish that sexual activity was taking place at the time of the accident. Any argument along this line is merely speculative. The evidence established that the defendant was operating his vehicle while under the influence of alcoholic beverages. His blood alcohol level was 0.228, more than twice the legal limit. The evidence established the pain medication administered at the hospital could not have altered or affected the blood alcohol level. The evidence established that the defendant was driving at approximately 86 mph–more than twice the suggested speed of 35 mph for the curve he failed to negotiate–which resulted in the collision that killed the victim. The state clearly presented sufficient evidence to the jury to support the finding that the defendant's judgment was impaired by alcohol at the time of the wreck which caused him to drive at an excessive speed and to lose control of the vehicle, resulting in the deadly crash. This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second argument in brief, the defendant argues the district court erred by denying his motion to suppress a statement he made after the accident while he was in the hospital. He claims his statement was not free and voluntary, as he was on medication at the time the state troopers spoke with him. The defendant acknowledges that a district court's ruling on the voluntariness of a confession will not be reversed unless said ruling lacks evidentiary support. *State v. Jackson*, 381 So.2d 485 (La.1980). Citing *State v. Williams*, 46,842 (La.App. 2 Cir. 3/14/12), 87 So.3d 949, the state contends that such rulings will be reversed only when the district court has committed manifest error.

Louisiana Revised Statutes 15:451 provides: "Before what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress,

8

intimidation, menaces, threats, inducements or promises." *See also State v. Hunt*, 09-1589 (La. 12/1/09), 25 So.3d 746. The defendant contends he had some degree of head trauma from the accident and had morphine in his system due to the medical treatment he was receiving.

Intoxication will not necessarily prevent a statement from being voluntary. It must be to such a degree that it negates a defendant's comprehension; the determination of this question is a matter for the district court. On review, a district court's determination will be reversed only when the evidence does not support it. *State v. Stevenson*, 05-52 (La.App. 5 Cir. 6/28/05), 908 So.2d 48, *writ denied*, 05-2592 (La. 6/2/06), 929 So.2d 1247.

At a motion to suppress hearing held on November 25, 2013, the parties dealt with statements made to state troopers on January 2, 2011, from his hospital bed after the accident. Trooper Trent Hanks testified that when he met with the defendant in the hospital, the defendant appeared to be conscious and alert. Likewise, Trooper Arnie Hanks testified that the defendant was alert and agreed to speak after being Mirandized. Trooper Sergeant Bo Comeaux also testified that the defendant was alert and aware of his surroundings when he met with him at the hospital.

In denying the motion to suppress, the trial court noted that medical records indicated that the defendant had received morphine, but there was no testimony regarding its effects. The trial court ruled that the testimony of the troopers formed a basis to find that the defendant's statement was free and voluntary. We find no error in the trial court's ruling.

9

## ASSIGNMENT OF ERROR NUMBER THREE

In the third assignment of error, the defendant contends that his twenty-year sentence, with ten years suspended and five years of supervised probation, is excessive. The 2011 version on La.R.S. 14:32.1 set forth a sentencing range of five to thirty years; thus, the unsuspended portion of the defendant's sentence is in the lower third of the potential range.

The defendant sets forth an incorrect sentencing test. He contends that the record must show first that the district court considered the sentencing factors set forth in La.Code Crim.P. art. 894.1; next, the sentence must not be constitutionally excessive. The defendant cites *State v. Smith*, 93-402 (La. 7/5/94), 639 So.2d 237. *Smith* does not call for such a test. Further, the *Smith* case discussed the Louisiana Sentencing Guidelines that were repealed in 1995.

The state correctly cites this court's opinion in *State v. Decuir*, 10-1112 (La.App. 3 Cir. 4/6/11), 61 So.3d 782, noting there is no requirement for the district court to itemize the sentencing factors of La.Code Crim.P. art. 894.1, as long as the record shows that the court considered such factors in particularizing the sentence. As the state also points out, the district court discussed the defendant's personal and family situations in some detail. After acknowledging that the district court stated it was not penalizing him for the delay in the proceedings, the defendant argues that the court did actually so. The court merely discussed the situation of the victim's family as a contrast to pleas for leniency from the defendant's family, which raised various emotional and financial considerations. The core of the argument for a lenient sentence was the difficulties the defendant's incarceration will cause for his family members. The court simply pointed out that the victim's family also must face emotional pain, as their family member is dead.

The analysis for excessive-sentence claims is established:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00), 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:
>
>> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996) ].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261 (first alteration in original).

The nature of the crime is obviously serious — it is a form of homicide. However, it is a homicide that is not based on an intentional killing. As for the nature of the offender, the district court observed that the defendant had a prior felony conviction for aggravated criminal damage to property that was "pled down" from attempted murder. The defendant received a ten-year sentence with all but two years suspended. The court also noted that the defendant successfully completed his probation for the charge. Further the defendant pled to a misdemeanor domestic violence charge in 2010 and at the time of sentencing had other matters pending that were related to domestic violence or other "crimes against a person." The court noted that the defendant was a thirty-four-year-old man, and the victim was seventeen.

Comparing this sentence to sentences in other cases for the same offense, we note that in *State v. Heins*, 51,763 (La.App. 2 Cir. 1/10/18), 245 So.3d 1165, the second circuit upheld a twenty-five-year sentence for a defendant who was seeking substance abuse treatment (she was on her way to a rehabilitation center at the time of the accident) but had a long history of substance abuse; in *State v. Gordon*, 17-846 (La.App. 3 Cir. 3/28/18), 240 So.3d 301, this court upheld three consecutive eighteen-year sentences for a defendant who killed three members of the same family—the court noted that he had no criminal history but had killed almost an entire family. These sentences show that the current sentence does not fall outside the norms of Louisiana jurisprudence, especially considering that the district court suspended half of the term.

Having considered the nature of the offense and the offender and the prevailing sentencing norms revealed by reference to other cases, we find that the sentence is not excessive.

## ASSIGNMENT OF ERROR NUMBER FOUR

In the fourth error he assigns, the defendant argues that the five-year period of probation he received is statutorily improper. Louisiana Code Criminal Procedure Article 893, as it existed in 2011, allowed for up to five years of probation. After the defendant committed the offense for which he was convicted, the legislature amended La.Code Crim.P. art. 893 in 2017, changing the probationary period from one to five years to not more than three years. As a general rule, the jurisprudence has held since at least 1944 that "the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer." *State v. Gros*, 205 La. 935, 938, 18 So.2d 507, 507 (1944). In *State v. Sugasti*, 01-3407 (La. 6/21/02), 820 So.2d 518, the supreme court held that a statutory amendment permitting a probated sentence for a conviction of possession of heroin was not retroactive when a defendant committed the offense prior to the effective date of the amendment. The law in effect at the time of the commission of the offense determines the penalty. *Id.* The length of time an individual is subjected to oversight by the state is a part of the penalty. *Id.* The legislature has repeatedly amended La.Code Crim.P. art. 893 and given such amendments retroactive effect (*See* La.Acts 2008, No. 104; La.Acts 1996). The legislature made no such determination in La.Acts 2017, No.280, which changed the term of probation in La.Code Crim.P. art. 893. We find no error in the trial court's determination that a five-year period of probation is legal since that is what the law provided at the time the offense was committed. Therefore, the assignment lacks merit.

13

## CONCLUSION

The defendant's conviction and sentence are affirmed. The defendant's sentence is amended by deleting the imposition of the "usual conditions of parole" and the trial court is hereby instructed to make an entry in the court minutes reflecting this amendment. Additionally, the defendant's case is remanded to the trial court for the establishment of a payment plan for the fine with the plan to be determined by either the trial court or by the Office of Probation and Parole with approval by the trial court. Finally, the trial court is ordered to amend the court minutes of sentencing to delete the provision requiring the payment of restitution.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**