[iWALTZER, Judge.
STATEMENT OF THE CASE
On 22 August 1995, Anthony Barthelemy was charged by bill of information with one count of distribution of cocaine and one count of possession of cocaine with intent to distribute, violations of LSA-R.S. 40:967(A)(1). On 11 September 1995, the State dismissed the distribution count. Barthelemy, through counsel, waived the reading of the information and entered a plea of not guilty to the possession count. On 13 September 1995, Barthelemy moved for speedy trial, bill of particulars, production of documents and for pre-trial discovery. He also moved to suppress identification, to suppress evidence obtained by execution of a search warrant, to suppress confession and other inculpatory statements and for a preliminary examination to determine probable cause. At the preliminary hearing on 3 November 1995, Barthelemy’s counsel marked his motions for bill of particulars and pre-trial discovery satisfied. He abandoned Ms motion for speedy trial and agreed to consolidation of his motions to suppress evidence, confession, and identification and for preliminary examination. Upon the testimony of Agent David Illg the trial court overruled the motion to suppress evidence, ruled the ^motion to suppress identification moot and found probable cause. The trial was set and continued several times on motions by the State and by the defense.
*1087 On 28 May 1996, the trial court ordered the State to provide all relevant Brady material to the defense. The trial court denied the defense motion to disqualify the prosecutor, Charles J. B allay and noted that B allay would not be a witness before the jury. The jury was impaneled. The trial court denied the defense motion to reconsider its motion to suppress evidence.
On 29 May 1996 the trial court found Brady material in documents provided by the Plaquemines Parish Sheriffs Office internal affairs investigation of Jerry Manuel and ordered the State to provide the material to the defense. The trial court examined Agent Sam Bailey’s file from the Westwego Sheriffs Office in camera and found no Brady material. The trial court granted the State’s motion to exclude evidence of Barthelemy’s acquittal in a previous trial.
The trial commenced. The State objected to allowing Agent Bailey to testify. The trial court overruled the objection, whereupon the State applied to this Court for an emergency writ of review. We denied the State’s writ application, and trial continued.
At the conclusion of the evidence, neither party submitted a request for special jury instructions. The trial court instructed the jury, which retired to deliberate. Two hours later, the jury sent a message to the court that they were deadlocked. The jury returned to the courtroom, whereupon the trial court questioned each juror individually; each juror suggested that further definition of “possession” might be helpful in reaching a verdict. The trial court and counsel for both parties discussed the definition off the record, and the court instructed the jury further on “possession.” After twenty minutes of additional deliberation, the jury ^returned a verdict of guilty of possession of cocaine. Ten jurors polled in favor of the guilty verdict and two polled in favor of a not guilty verdict.
The trial court ordered a pre-sentence investigation and set sentencing for 18 September 1996. On 5 June the State filed a Bill of Information charging Barthelemy under LSA-R.S. 16:529.1 A(l) as a multiple offender. At Barthelemy’s request, the matter was twice continued. On 19 December 1996, Bar-thelemy moved for a new trial, the court granted the State a twenty-day extension to respond and granted five days to the defense for rebuttal.
On 23 January 1997, the trial court denied the motion for new trial. The State charged Barthelemy in No. 96-2561 as a habitual offender. The trial court sentenced Barthe-lemy solely on the habitual offender charge to serve seven years in the custody of the Louisiana Department of Corrections with credit for time served since arrest. Barthe-lemy appeals his conviction and sentence. We affirm.
STATEMENT OF FACTS

Testimony from the Hearing on Motion to Suppress Evidence

Agent Illg testified that as to Count I, on 22 April 1995 an undercover buy took place in the parking lot of Alice’s Bar. According to Agent Illg, Agent Bailey met with him and was advised to check out bars on the East Bank of the river at various “hot spots” as to which the Plaquemines narcotics office had received information. Agent Illg testified that Agent Bailey played pool with Timothy Reddick at Alice’s Bar, asked if Reddick knew anyone “holding”, and was referred to “The Big Man”, Anthony Barthelemy, who was in the parking lot. Agent Bailey bought three pieces of white rock cocaine from Bar-thelemy.
|4Agent Illg testified as to Count II that prior to 30 June 1995 the narcotics office had received information on numerous occasions of drug trafficking by Gerald Reddick and Anthony Barthelemy in the Captain Lafrance Trailer Park (known at that time as Caledonia Lane). Agent Illg and Sergeant (now Captain) Michael Lafrance set up surveillance on several- nights, observing continual traffic that Agent Illg believed, based upon his experience, to be narcotics related with known drug users and dealers in the area. Based on the surveillance, the agents obtained a search warrant for one of the trailer homes. He executed the warrant on 30 June 1995 and found Barthelemy in the shower. With the aid of a narcotics dog, the officers located rock cocaine in a cabinet in the bathroom where Barthelemy had been showering. *1088 The officers seized $540, rock cocaine, marijuana and marijuana seeds.

Testimony at Trial

Agent Illg testified in detail concerning the surveillance of the trailer park. On 26 June 1995, Agent Illg and Captain Lafrance met with a reliable informant who had given information in the past and who believed narcotics activity was being conducted in the trailer park. Weather conditions did not allow for surveillance that night, but the agents returned on 27 June and recorded what they believed to be traffic consistent with drug traffic and consistent with the information provided by the informant. Cars came up to the trailer home and hand-to-hand contact was made between occupants of the cars and Barthelemy and Reddick, who came in and out of the trailer home to meet them, at 9:30, 9:41, 9:50 and on six occasions between 10:05 and 10:45 p.m. Weather conditions prevented surveillance on 29 June. On 29 June Agent Illg and Sergeant Cosse conducted ^surveillance and observed several persons go to the trailer and make contact with Bar-thelemy or Gerald Reddick.
Following the surveillance, Agent Illg obtained and executed a search warrant for the trailer home. His testimony concerning execution of the warrant duplicated that given at the preliminary hearing.
On cross-examination, defense counsel showed that Agent Illg had made an error in fixing the date of a photographic lineup in an unrelated criminal case.. Agent Illg testified that Leslie Barthelemy Demolle, the owner of the trailer home, told him she does not lock her trailer and that she, Gerald Reddick and Anita Barthelemy, who is an invalid, live in the trailer. Agent Illg also admitted that Reddick came to the trailer while the warrant was being executed and later pled guilty to a cocaine distribution charge arising during the surveillance period.
Captain Lafrance of the Plaquemines Parish Sheriffs Department confirmed Agent Illg’s testimony concerning the pre-warrant surveillance and testified that most of the drug buys made during the surveillance involved Barthelemy. Reddick apparently made two sales. Captain Lafrance confirmed Agent Illg’s testimony concerning the execution of the search warrant and seizure of contraband. The defense stipulated to the chain of custody.
Officer Angelic Savastano, a narcotics dog handler, testified that on 30 June 1995 she entered the trailer with the other officers. Once the trailer had been secured, she brought in her dog, Kilo, and he alerted on the bathroom cabinet. Captain Lafrance opened the cabinet and told her it contained cash and crack cocaine.
The defense called Demolle who testified that she returned home to the trailer to find that it was being searched. She said she lived in the trailer with her (^daughter, Anita Barthelemy, Anita’s boyfriend, Neal Harvey, and Reddick. Many of her relatives live in neighboring trailers. She testified that she never locks the doors to the trailer, and although Anita Barthelemy, who is crippled, cannot use the trailer’s bathroom, her relatives, and'particularly Anthony Barthelemy, often do so. She testified that she did not know who had been in the trailer the day the warrant was executed.
The defense offered the testimony of Detective Charles Guey outside the presence of the jury to establish Agent Illg’s corruption or lack of knowledge of the law. Guey testified that in an unrelated case, Agent Illg had arrested individuals and told them that if they did not allow their trailer to be searched, he would see to it that then- children would be taken away from them. Guey was present at that scene, felt that Agent Illg was threatening the people and chastised him. Agent Illg himself testified to the incident before the jury and claimed that after he had obtained the signature of the children’s mother to search the trailer, he told her if she was willing to cooperate and tell if and where she had narcotics, he would make sure that the children go to proper parents, to whomever they needed. Otherwise, he would “just turn them over to the proper authorities.” Henry Billiot, who was the principal in that case, testified that Agent Illg put a gun to his head, asked him whether he had any drags, then told his girlfriend that he would take her children from her if *1089 she did not consent to the search of her trailer.
The trial court did not allow Guey’s testimony concerning this incident, but did allow him to testify that Agent Illg is no longer a full-time deputy. Guey admitted that defense co-counsel represents him in domestic civil litigation.
Agent Bailey said that he told Agent Illg and Captain Lafrance that he had noticed a lot of activity around the trailer, and a man named Timothy Reddick told frhim that the occupants were selling drugs. Agent Bailey did not know whose trailer it was, and he never saw Barthelemy go in or out of the trailer. He said that on one occasion, in an unrelated case, he passed along false information, namely that he had purchased narcotics when in fact he had not, but that he did so under orders of Officer Jerry Manuel. Manuel did not testify, claiming Fifth Amendment protection. The State called Captain Warren Korach of the Plaquemines Parish Sheriffs Office who said that because of the incident concerning Agent Bailey, Manuel was fired. He said Agent Bailey had never been under investigation. Leonard Fama, a member of the Louisiana National Guard assigned to the Plaquemines Parish Sheriffs Office, testified that Agent Bailey told him that he would not testify in the case in which he had passed along incorrect information.
Captain Lafrance testified on cross-examination that the sources of his information concerning this investigation were a confidential informant and Agent Illg. Captain Lafrance said that he was aware that undercover agent Sam Bailey had at one time passed along false information, supposedly under orders, and that the person who gave him the orders claimed that he had not. He also said that on one occasion, in another unrelated case, Agent Bailey signed a photographic lineup, indicating the picture of a suspect, before the pictures had been arranged. In another case involving this defendant, Agent Bailey said that he had purchased cocaine from the defendant during a pool game at a bar that in fact does not have a pool table. However, Agent Bailey explained that the incident report’s reference to pool was a clerical error, and that he had not typed the original report containing the reference.
REVIEW FOR ERRORS PATENT
The record does not contain a waiver by Barthelemy of the statutory twenty-four hour delay between denial of his motion for new trial and sentencing. La.C.Cr.P. art. 873. Where, as here, defendant does not challenge his sentence or raise the issue as error on appeal, the failure to observe the delay is harmless error. State v. Collins, 584 So.2d 356, 359 (La.App. 4 Cir.1991).
FIRST ASSIGNMENT OF ERROR: There was insufficient evidence to convict Bar-thelemy of possession of cocaine.
Barthelemy contends that the State failed to prove beyond a reasonable doubt that he had actual or constructive possession of the cocaine.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817, 820 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 383-84 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438.
In order to prove possession, the State is not obligated to prove actual possession, but rather a showing of constructive possession may support such conviction. State v. Trahan, 425 So.2d 1222, 1226 (La.1983). Determination ofjjwhether there is possession sufficient to convict depends on the peculiar facts of each case. Id. The defendant’s presence in the area where the *1090 drug is found, or the mere fact that the defendant knows the person in actual possession, is insufficient to prove constructive possession. State v. Kingsmill, 514 So.2d 599, 601 (La.App. 4th Cir.1987). However, a person may be considered to be in constructive possession if the illegal substance is subject to his dominion and control, and he knowingly possessed it. The right of control may be shared with another person in actual possession of a drug the right to control the drug. Id. As this court noted in State v. Reaux, 539 So.2d 105, 108 (La.App. 4th Cir.1989):
In determining whether defendant exercised the requisite dominion and control the jury may consider his knowledge that illegal drugs are in the area, his relationship -with one found to be in actual possession, his access to the area where drugs were found, his physical proximity to the drugs and the evidence that the area was frequented by drug users.
In State v. Kingsmill, supra, cocaine and drug paraphernalia were found in an open cardboard box on a seat in a car occupied by the defendant and three other people and marijuana was found in a plastic bag on the front floorboard. This Court found sufficient evidence that the occupants of the car exercised dominion and control over the box and thus that they were all in constructive possession. In State v. Maresco, 495 So.2d 311 (La.App. 4th Cir.1986), writ den. 500 So.2d 419 (1987), this Court upheld a conviction for possession of a large open box of marijuana sitting next to him in the apartment of another. We reversed the defendant’s conviction for possession of methaqualone found in a trunk in another bedroom of the apartment absent proof that he knew the pills were there.
In State v. Williams, 594 So.2d 476 (La. App. 4th Cir.1992), the officers ^executed a search warrant at an apartment and found the two defendants in a bedroom. On the table, the officers observed cocaine, various drug paraphernalia, and $560.00 in small bills. Under the table, the officers found a bottle of muriatic acid. This Court found the evidence sufficient to support convictions of possession of cocaine with intent to distribute and of attempted possession with intent to distribute.
Barthelemy asserts that several other adults had access to the trailer who could have possibly placed the drugs in the trailer. However, the officers testified that they actually had observed Barthelemy engaging in drug transactions. When they, executed the warrant, they found him nude in the bathroom standing next to the cabinet where the drugs were found. He was the only adult in the house who had access to the bathroom at that time. The owner had been at work all day, and her daughter was confined to her bed and could not use the bathroom. The evidence was sufficient to support a conviction for possession of cocaine.
This assignment is without merit.
SECOND ASSIGNMENT OF ERROR: Barthelemy was denied due process and a fair trial because of the State’s failure to disclose exculpatory material and evidence.
The rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) applies to both exculpatory evidence and evidence which impeaches the testimony of a witness where the reliability or credibility of the witness may be determinative of guilt or innocence. U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Barthele-my argues that the State withheld evidence regarding Agent Bailey’s alleged participation in the dissemination of false luinformation in other unrelated cases. He argues that if he had been in possession of the information when the motion to suppress was argued, he would have been able to show that the application for the warrant was based on false information. Furthermore, if he had been in possession of the evidence when the motion was heard, he would have been successful in having the evidence suppressed and the State would not have had a case.
Barthelemy was in fact in possession of the evidence when the motion was re-urged. Thus all evidence was in front of the trial court, and as will be discussed in assignment of error four, the motion was properly de *1091 nied. In addition, all of the facts came out at trial, and were considered by the jury. ■
This assignment is without merit.
THIRD ASSIGNMENT OF ERROR: The trial court did not allow Barthelemy to show that he had been found not guilty on the distribution charges.
Barthelemy contends that the Plaquemines authorities targeted him, and that Agent Bailey was engaging in systematically providing false information concerning him. He points to Agent Bailey’s statement that he had purchased drugs from him at Alice’s Bar during a game of pool when in fact the bar does not have a pool table. He notes that during trial when Agent Bailey was called to testify, the trial court ruled that the defense could proceed on its “targeted” theory, that the State took writs to this court, State v. Barthelemy, 96-K-1253 (La.App. 4 Cir. 5/30/96), unpub., which this Court denied, and that accordingly, he should have been able to introduce evidence that he was acquitted on count one.
First, the defendant makes no specific reference to any part of the record to feshow exactly what evidence was not permitted by the trial court. Significantly, Barthelemy was not acquitted on count one. The State dropped the charge early on and there was no verdict of guilt or innocence. Barthelemy nevertheless argues that any evidence of the dropped charge was relevant to this proceeding.
La.C.E. art. 401 defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of less consequence to the determination of the action more probable or less probable than it would be without the evidence.” La. C.E. art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
In this case, evidence of distribution of cocaine two months before Barthelemy possessed cocaine with intent to distribute may have made the latter offense more likely to have occurred. In addition, it is not clear that extensive evidence on the earlier charge would not have served to confuse the jury. As such, it is not clear that the evidence would be more probative than prejudicial. See State v. Miller, 571 So.2d 603, 608-09 (La.1990). The jury heard extensive evidence concerning Agent Bailey’s credibility. Agent Bailey explained that the reference to Alice’s Bar was a “typographical error”, in that information from another investigation was copied without changing the name of “Alice’s Bar” to the bar where the buy actually occurred. As such, there was no indication that there was any intentional transferring of incorrect information as there was in the incident which led to Manuel’s dismissal. The State in fact, evidently in an abundance of caution, chose not to bring the charge to trial, although there was no showing of intentional misrepresentation. Accordingly, any further evidence ^concerning the State’s dismissal of Count I would have served to strengthen its point that it had not targeted Barthelemy and brought this prosecution in good faith.
This assignment is without merit.
FOURTH ASSIGNMENT OF ERROR: The trial court erroneously overruled Bar-thelemy’s Motion to Suppress Evidence.
The search warrant was issued based on an application by Agent Illg and Captain Lafrance that stated:
At approximately 9:45 p.m. June 26, 1995, an informant advised Agt. Agent Illg and Sgt. Captain Lafrance that Anthony Bar-thelemy and Gerald Reddick were dealing crack cocaine at their residence, the above described trailer in Pointe-a-la-Hache, La. The informant advised that vehicles would pull up to the trailer and Gerald Reddick or Anthony Barthelemy would exit the trailer and deal crack cocaine or the people would walk from the street and knock on the door and Gerald Reddick or Anthony Barthelemy would deal crack cocaine. The informant advised Agent Illg and Sgt. Captain Lafrance that they had seen crack cocaine in the residence that day, June 26, 1995 at approximately 7:30 p.m. The informant advised that the subjects did not work and that they had been arrested before.
*1092 On June 26, 1995, agents were unable to conduct surveillance due to weather conditions.
Sgt. Captain Lafrance advised Agt. Agent Illg that he had received information about this location numerous times and had observed known drug users and dealers at this location.
On June 27, 1995 at approximately 9:30 p.m., Agt. Agent Illg and Sgt. Captain Lafrance set up surveillance observing a vehicle with two occupants parked in front of the trailer. A black male subject exited the trailer and went to the drivers (sic) side of the vehicle, made contact and then departed.
At 9:41 p.m., a vehicle pulled up to the trailer. The ^driver got out of the vehicle, went to the door at which time Anthony Barthelemy and the subject made hand contact.
At 9:50 p.m., a vehicle dropped off a black male subject who walked up to the trailer making hand contact with Anthony Barthe-lemy. The vehicle returned and picked up the subject by the road.
Between 10:05 p.m. and 10:45 p.m. Agent Illg and Sgt. Captain Lafrance observed six other vehicles go to the trailer and make contact with Gerald Reddick and/or Anthony Barthelemy.
At 10:45 p.m. the surveillance was completed.
On June 28, 1995 agents were unable to conduct a surveillance due to weather conditions.
On June 29, 1995 Agent Illg and Sgt. Cosse conducted a surveillance and observed several black male subjects go to the trailer, make contact with Gerald Red-dick and/or Anthony Barthelemy. Information received from an undercover agent who is working the area of the East-bank advised that is (sic) common talk on the street of constant drug dealing at that location.
Agt. Agent Illg and Sgt. Captain Lafrance are in possession of warrants for Anthony Barthelemy and Gerald Reddick for dist. of crack cocaine made by the undercover agent working the area.
Generally, searches may be conducted only pursuant to a warrant issued by a judge based on probable cause. Probable cause exists where the facts and circumstances within the affiant’s knowledge and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that the evidence may be found at the place to be searched. In considering a magistrate’s finding of probable cause a reviewing court must determine whether the totality of circumstances set forth in the affidavit is sufficient to allow the magistrate to make a practical, common sense decision that the evidence will be found in the place to be ^searched; and that this decision includes not only the veracity of the affiant, but also the basis of knowledge of those persons supplying hearsay information. The task of a reviewing court is simply to insure that the magistrate had a substantial basis for concluding that probable cause existed, and his determination of probable cause should be accorded great deference by a reviewing court. State v. Hamilton, 572 So.2d 269, 272-73 (La.App. 1 Cir.1990), writ denied, 578 So.2d 929 (La.1991).
When considering a magistrate’s finding of probable cause, the reviewing court must determine whether the “totality of the circumstances” set forth in the affidavit is sufficient to allow the magistrate
to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the “veracity” and “basis of knowledge” of persons supplying hearsay information, there is a reasonable probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a “substantial basis for ... conclu[ding] that probable cause existed”.
Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Deference to the magistrate, however, is not boundless. A reviewing court must inquire into the knowing or reckless falsity of the affidavit on which the magistrate’s determination was based. U.S. v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984).
*1093 Barthelemy argues that the affi-ants knowingly or intentionally made false statements when they stated that they were in possession of an arrest warrant for him arising out of Agent Bailey's alleged buy at Alice’s Bar. An affidavit supporting a search warrant is presumed to be valid, and a defendant has the burden of proving that the representations in the affidavit are false. State v. Brown, 93-2089 (La.App. 4 Cir. 12/15/94) p. 6, 647 So.2d 1250, 1253, writ denied, 95-0497 (La.12/6/96), 684 So.2d 921. Making a material and intentional misrepresentation to the magistrate involves a fraud upon the courts and will result in the invalidation of the warrant and suppression of the items seized. State v. Brown, 93-2089 at p. 5, 647 So.2d at 1252. “Intentional,” in this context, means a deliberate act designed to deceive the issuing magistrate. State v. Brown, 93-2089 at p. 6, 647 So.2d at 1253.
The record does not support Barthelemy’s argument that the application contained intentional misstatements. The affiants stated that they were in possession of an arrest warrant that Barthelemy has not shown to be false. They evidently were in possession of an arrest warrant. There is no indication that at the time Agent Illg or Captain Laf-rance applied for the search warrant they knew or had reason to know that the arrest warrant itself relied on inaccurate information. Thus, there is no evidence that the application contained intentional misstatements. Captain Lafrance and Agent Illg’s statements in the affidavit do not constitute a deliberate act designed to deceive the issuing magistrate so as to be a fraud upon the court.
Furthermore, there is sufficient information in the affidavit to support probable cause absent the arrest warrant. The affi-ants stated that they received information from a confidential informant that drug trafficking was occurring at the trailer. They independently corroborated that information by watching behavior they knew to be drug trade. They observed numerous people arriving at the trailer, being met by the defendant or his accomplice, staying only a short time, making hand to hand contact with either of the men during that time, and then leaving the area. Under the totality of the circumstances, there was sufficient Aprobable cause to support the issuance of the search warrant. The trial court did not err in denying the motion to suppress.
This assignment is without merit.
FIFTH ASSIGNMENT OF ERROR: The trial court erroneously found Barthelemy was a habitual offender under LSA-R.S. 15:529.1.
Barthelemy argues that the State failed to prove that he was the same person earlier convicted. He concedes that the State elicited testimony from a fingerprint expert who testified that the fingerprints taken of the defendant on the day of the hearing matched fingerprints on an earlier bill of information. However, he argues the State did not prove that the fingerprints on the earlier bill of information were his or that they were taken in compliance with La. C.Cr.P. art. 871 by a duly commissioned sheriff or law enforcement agent, and then properly affixed to the bill of information.
La.C.Cr.P. art. 871(C) provides:
The certificate required by Paragraph B of this Article shall be admissible in evidence in the courts of this state as prima facie evidence that the fingerprints appearing thereon are the fingerprints of the defendant against whom the judgment of guilty of a felony or one of the enumerated misdemeanors was rendered.
Here, the State introduced copies of the bills of information in the two prior cases together with fingerprints a signed certificate. The evidence was therefore sufficient to prove that the fingerprints taken in the earlier cases were in fact those of the defendant.
This assignment is without merit.
JsCONCLUSION AND DECREE
The Court having found no merit in the defendant’s assignments of error and having found the patent error to be harmless under the circumstances of this appeal, the conviction and sentence are affirmed.
AFFIRMED.