STATE OF LOUISIANA      *      NO. 2023-K-0690

VERSUS      *

     COURT OF APPEAL

ROOSEVELT RANDOLPH      *

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 558-034, SECTION "DIVISION G"
Honorable Nandi Campbell, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Dale N. Atkins)

JASON R. WILLIAMS, District Attorney
BRAD SCOTT, Chief of Appeals
THOMAS FREDERICK, Assistant District Attorney
619 South White Street
New Orleans, LA 70119

     COUNSEL FOR RELATOR, State of Louisiana


Shermin S. Khan
The Khan Law Firm, L.L.C.
2714 Canal Street, Suite 300
New Orleans, LA 70119

James Word II
301 Main Street, Suite 2200
Baton Rouge, Louisiana 70825

     COUNSEL FOR RESPONDENT, Roosevelt Randolph



**WRIT GRANTED; JUDGMENT REVERSED; REMANDED**
**NOVEMBER 20, 2023**

Relator, the State of Louisiana ("State"), seeks review of the district court's September 29, 2023 ruling, which granted the "Motion to Suppress Illegally Obtained Evidence" ("Motion to Suppress") filed by Respondent, Roosevelt Randolph ("Mr. Randolph"). For the following reasons, we grant the State's writ application, reverse the district court's ruling, and remand this matter for further proceedings consistent with this Opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 5, 2022, Detective Sean LeBlanc ("Detective LeBlanc")[1] of the 6th District of the New Orleans Police Department ("NOPD") provided an affidavit and submitted an application for a search warrant for 2836 Philip Street, New Orleans, LA 70113 ("2836 Philip Street"). Detective LeBlanc's affidavit in support of the warrant read as follows:

> Throughout the final months of 2022, the New Orleans Police 6[th] District received numerous complaints from both anonymous tips and the Mayor's Neighborhood Engagement Office, regarding gun violence and narcotic activity, in the neighborhood surrounding the intersection of Philip Street and Willow Street.

---

[1] We note that the spelling "Leblanc" also appears in the record. Because Detective LeBlanc used the spelling "LeBlanc" in his affidavit, which is discussed more fully throughout this Opinion, we will also use the spelling "LeBlanc."

In response to these complaints, New Orleans Police 6[th] District Detectives Sean LeBlanc and William Hery [("Detective Hery")[2]], with the assistance of the FBI New Orleans Gang Task Force (henceforth NOGTF),[3] focused their attention and resources towards the problematic area.

6th District Detectives began their reconnaissance by conducting rolling surveillance of the area and observed a relatively heavy flow of pedestrian traffic to and from the front porch of 2836 Philip Street. Detectives LeBlanc and Hery recognized that much of the pedestrian travel to and from 2836 Philip Street consisted of brief visits and believed the traffic to be indicative of narcotic activity. Detectives also noted that most of the pedestrians arriving to 2836 Philip Street would purposefully interact with a black male, approximately 60 years of age, bald, with a gray beard. This older black male subject was usually located on the front porch of 2836 Philip Street during said times of heavy pedestrian traffic to the location and was also consistently observed entering and exiting the residence, 2836 Philip Street.

Having made these observations, Detectives researched the address of 2836 Philip Street (via police database) and discovered an older black male by the name of Roosevelt Randolph Jr. (B/M; D.O.B. 4/18/1955) as a resident of 2836 Philip Street. Detectives researched said name and located a New Orleans Police body worn camera video (H-28719-17), which recorded a traffic stop of [Mr.] Randolph. Upon observing the video, Detectives immediately recognized [Mr.] Randolph as the same subject previously observed via surveillance on the porch of 2836 Philip Street.

. . . .

In furtherance of their investigation, Detectives LeBlanc and Hery collaborated with NOGTF and met with a proven reliable confidential informant (henceforth CI)[4] to discuss the aforementioned area. The CI advised that a black male known by the name "Roosevelt", sells crack cocaine from 2836 Philip Street. The CI further stated that

---

[2] According to the record, Detective Hery is also with the 6th District of the NOPD.

[3] As Detective LeBlanc's affidavit did, this Opinion will also use the acronym "NOGTF" to refer to the FBI New Orleans Gang Task Force.

[4] To avoid confusion, this Opinion will write out the phrase "confidential informant" when generally discussing confidential informants as opposed to using "CI" when referring to the particular confidential informant involved in the actions herein described.

he/she was willing to make controlled purchase of crack cocaine from "Roosevelt", to assist in the Detectives' investigation.

At a date and time within 72 hours of December 5, 2022, NOGTF met with the CI and searched their person assuring he/she was not in possession of any currency/contraband. NOGTF then provided the CI with currency for which to make the narcotic purchase.

6[th] District Detectives and NOGTF watched the CI travel to 2836 Philip Street where he/she met with [Mr.] Randolph, located on the front porch the residence. The CI then handed currency to [Mr.] Randolph, who then entered 2836 Philip Street leaving the CI waiting outside. Moments later, an unknown black male subject exited 2836 Philip Street and handed a small unknown item to the CI. The CI then left the area and traveled to a predetermined location (under constant surveillance) for an operation debrief.

Upon arrival, the CI provided NOGTF with a clear plastic bag containing an off-white rock like substance and advised that he/she had purchased crack cocaine from "Roosevelt". NOGTF then relocated back to their headquarters where they conducted a field test of the suspected narcotic using NIK Kit Test G. The test yielded an immediate and unambiguous colorimetric response indicating the presence of crack cocaine. The narcotic was then submitted by NOGTF as evidence at the FBI Evidence Control Room.

Based on the observations of the Detectives, the information provided by a credible CI, and the successful controlled purchase of crack cocaine from [Mr.] Randolph at 2836 Philip Street, Detectives LeBlanc and Hery have cause to believe that additional evidence, suggesting narcotic trafficking, is stored within 2836 Philip Street.

**The New Orleans FBI Gang Task Force is responsible for execution of the Search Warrant.**

The magistrate judge signed the search warrant on December 5, 2022.

Thereafter, on December 12, 2022, NOGTF placed Mr. Randolph and his co-defendant, Cleavon Armstrong ("Mr. Armstrong"), into custody and immediately arrested them at 2836 Philip Street during the execution of the search warrant. By Bill of Information dated May 11, 2023, the State charged Mr. Randolph with one count each of possession with the intent to distribute cocaine in an amount less than twenty-eight grams; possession with the intent to distribute

3

marijuana in an amount less than two-and-a-half pounds; and illegal carrying of a weapon with a controlled dangerous substance. These charges constituted violations of La. R.S. 40:967(B)(1)(a), 40:966(B)(2)(a), and 14:95(E), respectively.

***Mr. Randolph's Motion to Suppress***

Subsequently, on June 28, 2023, Mr. Randolph filed his Motion to Suppress, wherein he sought to suppress any evidence seized as a result of the December 12, 2022 search and alleged that there had not been probable cause to justify the issuance of the search warrant. Specifically, Mr. Randolph challenged the reliability of the CI and the sufficiency of the affidavit presented to the magistrate. On September 5, 2023, the trial court held a hearing on Mr. Randolph's Motion to Suppress. At the hearings, Detective LeBlanc and Detective Hery both testified.

*Testimony of Detective LeBlanc*

Detective LeBlanc testified regarding the investigation, as well as the affidavit and his application for search warrant for 2836 Philip Street. In particular, Detective LeBlanc stated that, prior to submitting the application for the search warrant, he conducted rolling surveillance of the area and observed multiple parties engaging in brief visits on the front porch of the home located at 2836 Philip Street.

In furtherance of the investigation, as explained by Detective LeBlanc, he and other detectives collaborated with NOGTF and a CI, who advised that "someone named Roosevelt [was] selling crack cocaine at this location." Further, according to Detective LeBlanc, the CI was willing to make a controlled purchase. Describing the controlled purchase, Detective LeBlanc explained that NOGTF provided currency to the CI only after searching the CI to assure that the CI was not already in possession of any currency or contraband. Detective LeBlanc

4

testified that, thereafter, he, Detective Hery, and NOGTF conducted surveillance of the CI while the CI travelled to 2836 Philip Street. According to Detective LeBlanc, "The [CI] met with [Mr. Randolph]" and "provided [Mr. Randolph] with currency." Detective LeBlanc stated that Mr. Randolph subsequently went inside the house, after which time "[a]n unidentified black male exit[ed] the house and provide[d] an object to the [CI]."

Thereafter, as Detective LeBlanc explained, "[t]he [CI] then relocated to another location for a debrief," at which time the CI "provided the FBI with crack cocaine and said [he/she] had purchased crack cocaine from [Mr. Randolph]." During his testimony, Detective LeBlanc noted that he did not know the informant and that he based the CI's reliability on the representations made by NOGTF because the CI was a federal informant. However, Detective LeBlanc also testified, as described previously, that he personally observed the CI engage in a controlled narcotics purchase with Mr. Randolph at 2836 Philip Street. Detective LeBlanc explained that, after observing the controlled narcotics purchase, he "[a]uthored a search warrant to search the residence for any further evidence of narcotic trafficking."

Detective LeBlanc testified that on December 12, 2022, he returned to 2836 Philip Street with Detective Hery and NOGTF to execute the warrant and conduct the search. Detective LeBlanc explained that, upon arriving, he and other officers observed a Kia parked across the street from 2836 Philip Street, which "[they] had noticed before, during surveillance, as having relations to th[e] house [at 2836 Philip Street]." In particular, Detective LeBlanc stated that, during their previous surveillance, he and other officers had seen the occupant of the vehicle "going in and out of the house." As explained by Detective LeBlanc, when NOGTF

5

approached the Kia, they "saw . . . what . . . ended up being bags of crack cocaine in [the Kia occupant's] mouth." Subsequent identification revealed the occupant of the Kia to be Mr. Armstrong.

Further, Detective LeBlanc testified that, prior to the officers conducting the search, Detective Hery advised the occupants of the house located at 28136 Philip Street, including Mr. Randolph, of their *Miranda* rights.[5] Detective LeBlanc stated that he spoke to Mr. Randolph subsequent to the reading of the *Miranda* rights and explained "the nature of the investigation," including the fact that this was a "narcotics search warrant on the house." According to Detective LeBlanc's testimony, Mr. Randolph responded that "[h]e slipped up after some deaths in his family and knew the risk [he was] taking selling narcotics." Detective LeBlanc also testified that upon inquiring whether there were any narcotics or firearms inside the residence, Mr. Randolph told Detective LeBlanc that there were approximately "[eight] grams of crack cocaine inside the house and a firearm." Detective LeBlanc noted that the officers recovered a firearm, eight grams of crack cocaine, digital scales, and "[a] little bit of marijuana." On cross-examination, Detective LeBlanc testified that he "witnessed the buy" but admitted that he did not see Mr. Randolph hand anything to the CI.

*Testimony of Detective Hery*

Detective Hery testified that he worked with Detective LeBlanc in this investigation of narcotics trafficking and execution of a search warrant at 2836 Philip Street. When asked about how he first became involved in this investigation,

---

[5] When asked whether he was "present near Detective Hery at the time of him giving [*Miranda*] warning to the occupants," Detective LeBlanc responded, "I [do not] recall how close I was or if I heard him read it. All I know is that he told me that he advised [them] of their rights."

Detective Hery stated that the 6th District received multiple complaints about the 2800 block of Philip Street. Accordingly, as Detective Hery explained, he and Detective LeBlanc conducted rolling surveillance and, along with NOGTF, conducted a controlled buy of narcotics via a CI. Detective Hery reported that, thereafter, Detective LeBlanc prepared the search warrant for the residence at 2836 Philip Street. Additionally, Detective Hery testified that after NOGTF secured the location, Mr. Randolph and Mr. Armstrong were found at and outside 2836 Philip Street, respectively. Subsequently, according to Detective Hery, he detained Mr. Randolph and issued *Miranda* warnings from a card. Detective Hery testified that after he had been read his *Miranda* rights, Mr. Randolph stated that "[h]e [had not] really been involved in anything for quite some time" but had "slipped up after a death of a family member" and "had [eight] grams of [cocaine] and a gun in a dresser drawer or table drawer."

On cross-examination, when asked whether he witnessed the CI "buy this alleged crack cocaine from Mr. Roosevelt," Detective Hery responded, "I watched him go in the house and then exit the house." Further, when asked whether he witnessed Mr. Roosevelt transfer any crack cocaine to the CI, Detective Hery responded, "No, not me." He further explained, "If anything, it would be Detective LeBlanc, but I [do not] think he saw the actual hand-to-hand transaction either." Additionally, Detective Hery testified that although he did not know the identity of the CI, he had "firsthand knowledge that [the CI was] trustworthy" via NOGTF reporting the CI to be "a trustworthy confidential informant."

### September 29, 2023 Ruling

At the close of the September 5, 2023 hearing, the district court requested additional briefing on the issue of probable cause concerning Mr. Randolph's

Motion to Suppress. The State and Mr. Randolph submitted memoranda on September 14, 2023. On September 29, 2023, the district court issued a written ruling, granting Mr. Randolph's Motion to Suppress and finding that there had been no probable cause for the warrant. The district court held that: (1) "the search warrant was not valid and not based on sufficient probable cause[;] and (2) the evidence obtained by the officers pursuant to the warrant is not admissible at trial." The district court noted that the warrant was based on "the detectives' observations of the heavy flow of pedestrian traffic," and "the information provided by the [CI]." Further, the district court stated that "there was no testimony as to the reliability of the [CI] other than that the [CI] was an FBI informant." Additionally, the district court noted that "[t]he State failed to illicit any testimony as to the number of cases the [CI] has been used, the outcome of those cases, or the extent of the relationship between the [CI] and the FBI." Therefore, the district court opined that the "[h]eavy foot traffic alone [did] not rise to the level of probable cause necessary to issue a search warrant."

Thereafter, on October 26, 2023, the State filed the subject writ application with this Court, seeking review of the district court's September 29, 2023 ruling. In its writ application, the State asserts that the district court erred in finding the search warrant was not supported by probable cause and in suppressing the evidence seized pursuant to the warrant. Mr. Randolph filed his opposition to the State's writ application on November 7, 2023. We note that trial in this matter is set for December 5, 2023.

## STANDARD OF REVIEW

When, as here, a magistrate makes a probable cause determination "prior to issuance of a search warrant," reviewing courts are to give this determination

"significant deference," such that "marginal cases should be resolved in favor of finding the magistrate's assessment to be reasonable." *State v. Green*, 2002-1022, p. 8 (La. 12/4/02), 831 So.2d 962, 969 (quoting *State v. Rodrigue*, 437 So.2d 830, 833 (La. 1983)). Regarding appellate review of a district court's ruling on a motion to suppress, this Court has previously explained that "a district court has 'great discretion when ruling on a motion to suppress,'" such that an appellate court will not disturb a ruling on a motion to suppress unless the district court abused its discretion. *State v. Willis*, 2022-0452, pp. 6-7 (La. App. 4 Cir. 9/1/22), 348 So.3d 167, 172 (quoting *State v. Polkey*, 2020-0482, p. 3 (La. App. 4 Cir. 11/25/20), 310 So.3d 605, 608). The reason that a district court has such great discretion on a motion to suppress is "because the [district] court ha[d] the opportunity to observe the witnesses and weigh the credibility of their testimony." *Id.* at p. 7, 348 So.3d at 172 (first alteration in original) (quoting *State ex rel. J.S.*, 2008-1401, p. 4 (La. App. 4 Cir. 2/18/09), 6 So.3d 904, 908).

"However, a motion to suppress presents a mixed question of law and fact." *Id.* (citing *Polkey*, 2020-0482, p. 4, 310 So.3d at 608). Therefore, the "appellate court reviews the underlying facts [under] an abuse of discretion standard, but reviews conclusions to be drawn from those facts *de novo*." *Id.* (alteration in original) (quoting *Polkey*, 2020-0482, p. 4, 310 So.3d at 608). When "the facts are not in dispute," the "appellate court 'must consider whether the trial court came to the proper legal determination under the undisputed facts.'" *Id. See also State v. Parker*, 48,339, p. 11 (La. App. 2 Cir. 10/9/13), 124 So.3d 516, 522 (citing *State v. Hemphill*, 41,526, p. 10 (La. App. 2 Cir. 11/17/06), 942 So.2d 1263, 1271; *State v. Marshall*, 46,457, p. 6 (La. App. 2 Cir. 8/10/11), 70 So.3d 1106, 1111).

DISCUSSION

In its writ application, the State asserts that "[t]he [district] court erred by finding the search warrant was not supported by probable cause and suppressing the evidence seized pursuant to the warrant." In particular, the State observes that the district court's written ruling stated "that the warrant was supported solely by 'observations of the heavy flow of pedestrian traffic' and 'information provided by the confidential informant.'" However, the State argues that the district court's written ruling "omitted th[e] crucial fact" that a "controlled buy" occurred in this matter. To this end, the State contends that "one of the core purposes of a controlled purchase is to enable officers to *personally observe* incriminating acts that can support issuance of a warrant." Further, according to the State, "[a]nother core purpose is to use an informant to gather evidence that *does not depend on the credibility of the informant*[] because officers personally search the informant beforehand and keep the informant in their line of sight constantly throughout the purchase." Thus, the State argues that Detective LeBlanc's and Detective Hery's observation of the purchase of the narcotics by the CI was sufficient to support a finding of probable cause, such that the district court was not required in these circumstances to determine the reliability of the CI.

In his opposition, Mr. Randolph counters that based on Detective LeBlanc's and Detective Hery's testimony, neither of them actually witnessed Mr. Randolph hand anything to the CI. Additionally, Mr. Randolph notes that neither Detective LeBlanc nor Detective Hery knew the identity of the CI. Thus, according to Mr. Randolph, Detective LeBlanc's and Detective Hery's testimony contradicted the information in the affidavit attached to the search warrant. Further, Mr. Randolph

10

argues that these factors rendered the reliability of the CI relevant to the probable cause determination for the issuance of the search warrant.

***Burden of Proof on a Motion to Suppress***

Both the Louisiana and the United States Constitutions protect people from unreasonable searches and seizures.[6] Accordingly, a defendant may file a motion to suppress if he (or she) believes the evidence against him (or her) was unconstitutionally obtained. La. C.Cr.P. art. 703. Regarding motions to suppress evidence, La. C.Cr.P. art. 703 provides, in pertinent part:

> A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
>
> . . . .
>
> D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.

---

[6] Louisiana Constitution Article I, Section 5, which is discussed more fully in the Opinion, provides:

> Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.

Additionally, U.S. Const. amend. IV states that people have a "right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that this right "shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

La. C.Cr.P. art. 703(A), (D). As delineated previously, the record demonstrates that officers searched the subject residence at 2836 Philip Street pursuant to a search warrant; so Mr. Randolph bore the burden of proof on his Motion to Suppress per La. C.Cr.P. art. 703(D). Therefore, we turn our consideration to whether Mr. Randolph proved that the evidence was unconstitutionally seized. In particular, we consider, as Mr. Randolph alleged in his Motion to Suppress, whether the affidavit attached to the application for the search warrant was insufficient because it should have contained "further information concerning the [CI]'s reliability and the alleged facts reported by [the CI]" or if, as argued by the State, the affidavit established probable cause for the issuance of the search warrant.

### *Probable Cause Required for a Search Warrant*

Louisiana Constitution Article I, Section 5 states, in pertinent part, that "[n]o warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search." Further, La. C.Cr.P. art. 162 provides, in pertinent part:

> A. A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
>
> . . . .
>
> C. A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure.

La. C.Cr.P. art. 162(A), (C).

In interpreting these provisions, the Louisiana Supreme Court has explained "that probable cause sufficient to issue a search warrant 'exists when the facts and

circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched.'" *State v. Casey*, 1999-0023, pp. 3-4 (La. 1/26/00), 775 So.2d 1022, 1027-28 (quoting *State v. Johnson*, 408 So.2d 1280, 1283 (La. 1982)) (citing La. C.Cr. P. art. 162). This determination rests on whether the "totality of the circumstances" forms a "substantial basis" for a finding of probable cause. *State v. Robinson*, 2003-1350, p. 5 (La. App. 5 Cir. 3/30/04), 871 So.2d 575, 579 (quoting *Green*, 2002-1022, p. 8, 831 So.2d at 969). *See also State v. Isaac*, 1993-2094 (La. App. 4 Cir. 6/15/94), 639 So.2d 337, 341 (holding "that the totality of the circumstances cited in the affidavit was sufficient to establish probable cause."). Thus, "[p]robable cause for the issuance of a search warrant does not involve certainties of proof beyond a reasonable doubt, or even a *prima facie* showing, but rather involves probabilities of human behavior as understood by persons trained in law enforcement and based on the totality of the circumstances." *State v. Williams*, 46,842, p. 11 (La. App. 2 Cir. 3/14/12), 87 So.3d 949, 957 (citing *State v. Shumaker*, 41,547, p. 11 (La. App. 2 Cir. 12/13/06), 945 So.2d 277, 285). The Louisiana Supreme Court has explained that when a magistrate has already found probable cause in an affidavit, "reviewing courts should interpret the affidavit in a realistic and common sense fashion, aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation." *Green*, 2002-1022, p. 8, 831 So.2d at 969.

An application for a search warrant "must [also] establish a probable continuing nexus between the place sought to be searched and the property sought to be seized." *Casey*, 1999-0023, p. 4, 775 So.2d at 1028 (citing *State v. Weinberg*,

13

364 So.2d 964, 968 (La. 1978)). Such a nexus exists if "[i]t is logical to infer that the types of items sought" would be found in the place(s) sought to be searched. *U.S. v. Edwards*, 124 F.Supp.2d 387, 421 (M.D. La. 2000). Additionally, the information that establishes probable cause for issuance of the search warrant must be within the "four corners" of the affidavit. *Casey*, 1999-0023, p. 4, 775 So.2d at 1028 (citing *State v. Duncan*, 420 So.2d 1105, 1108 (La. 1982)). This is "because the judge, not the affiant, is the one who must be satisfied as to the existence of probable cause." *Green*, 2002-1022, p. 8, 831 So.2d at 969. That is, the "magistrate must be given enough information to make an independent judgment that probable cause exists" so that "his [or her] action [is not] . . . a mere ratification of the bare conclusions of others." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 915, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984)) (citing *State v. Manso*, 449 So.2d 480, 482 (La. 1984)). Under these guidelines, the Louisiana Supreme Court advises "courts . . . [to] strive to uphold warrants to encourage their use by police officers." *Id.* (citing *State v. Jenkins*, 2001-0023, p. 2 (La. 6/22/01), 790 So.2d 626, 627).

As previously described, the subject affidavit explained that Detective LeBlanc and Detective Hery worked with the CI in this matter. In discussing probable cause relating to information obtained from a confidential informant, the Louisiana Fifth Circuit Court of Appeal ("Fifth Circuit") has explained that "[w]hile the veracity, reliability or basis of knowledge of a [confidential informant] is relevant in evaluating probable cause," this "is not the determining factor." *Robinson*, 2003-1350, p. 7, 871 So.2d at 580 (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *State v. Hogan*, 2002-0924, p. 6 (La. App. 5 Cir. 1/28/03), 839 So.2d 296, 299). Rather, if an affidavit includes information from a confidential informant, the test remains whether there is a

sufficient basis for a probable cause finding under the totality of the circumstances. *Id.*[7] Even if an affidavit does not provide specific information regarding the confidential informant's reliability or success rate, if "the search warrant was primarily based on the controlled drug buy set up and observed by the affiant," then this constitutes probable cause for the issuance of the warrant under the totality of the circumstances test. *Hogan*, 2002-0924, p. 7, 839 So.2d at 300. To the extent that an officer did not observe the defendant's interactions with the confidential informant, the officer can "rely upon information received through [the] informant, rather than upon his [or her] direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Gates*, 462 U.S. at 242, 103 S.Ct. at 2334 (quoting *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)).

For example, in *Hogan*, the defendant argued on appeal that the district court erred in failing to suppress a search warrant. 2002-0924, p. 3, 839 So.2d at 297. As delineated by the Fifth Circuit during its review, the affidavit attached to the application for the search warrant established that:

> [T]he affiant, Agent [Steven] Rayes [("Agent Rayes")], learned from a [confidential informant]'s tip in early June . . . 2000 that cocaine was being sold from a residence at 802 Fifth Street by someone

---

[7] As explained in *Hogan*,

> The two-prong test, proof of veracity and the basis of the [confidential informant]'s knowledge that had been adopted in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), was abandoned by the U.S. Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates*, the Court adopted the "totality of the circumstances" test to evaluate a [confidential informant]'s credibility. *Gates,* 462 U.S. at 231, 103 S.Ct. at 2328.

2002-0924, p. 6, 839 So.2d at 299.

named "Larry." Agent Rayes corroborated this tip by meeting with the [confidential informant] within 48 hours of the application for the search warrant (June 30, 2000), supervising the [confidential informant] in a controlled purchase of cocaine from the residence at issue, ensuring the [confidential informant] was free of all contraband, following the [confidential informant] to the residence, observing the [confidential informant] enter the residence and remain inside for a short period of time, observing the [confidential informant] emerge from the residence, maintaining constant surveillance on the [confidential informant] and following the [confidential informant] to a pre-arranged meeting location. The affiant further corroborated the [confidential informant]'s tip by taking custody of the cocaine from the [confidential informant], conducting a presumptive field test of the substance, determining that the substance was cocaine, and securing the purchased quantity of cocaine in the narcotics evidence locker.

*Id.* at pp. 6-7, 839 So.2d at 299-300.

In reviewing the affidavit, the Fifth Circuit noted that while it did "not state that the [confidential informant] told [Agent Rayes] he purchased cocaine from someone in the residence, the last line of the fourth paragraph of the affidavit state[d] that the affiant secured the 'purchased quantity of cocaine' in the narcotics evidence locker." *Id.* at p. 7, 839 So.2d at 300. The Fifth Circuit held that it could "reasonably infer from this statement that the [confidential informant] had purchased this cocaine from the residence prior to turning it over to the affiant." *Id.* Additionally, the Fifth Circuit observed that Agent Rayes did not "provide specific information regarding the [confidential informant]'s reliability or success rate" in his affidavit. *Id.* Nonetheless, the Fifth Circuit found that because "the search warrant was primarily based on the controlled drug buy set up and observed by the affiant," that "successful buy [wa]s sufficient." *Id.* (citing *State v. Johnson*, 27,522, p. 16 (La. App. 2nd Cir.12/6/95), 665 So.2d 1237, 1248). The Fifth Circuit concluded that the affidavit provided probable cause under the totality of the circumstances for the issuance of the search warrant. *Id. See also State v. Hankton*, 2017-1108, pp. 3-4 (La. 7/20/17), 222 So.3d 41, 44 (holding "that a controlled

purchase of narcotics conducted by police provides sufficient probable cause to secure a warrant" and that the "credibility [of the participants in the controlled narcotics purchase] [i]s immaterial" (citing *State v. Gant*, 637 So.2d 396, 397 (La. 1994))); *State v. Brown*, 2009-0657, p. 4 (La. App. 4 Cir. 10/14/09), 23 So.3d 989, 992 (finding "sufficient evidence to support the issuance of the search warrant, given the controlled purchase of cocaine from appellant at the residence" (citations omitted)); *State v. Barthelemy*, 1997-2018, 2019  (La. App. 4 Cir. 1/20/99), 726 So.2d 1085, 1093 (finding probable cause to support an arrest warrant where officers independently corroborated the information from a confidential informant by observing behavior they knew to be drug trading).

With these principles in mind, we consider their application to the matter *sub judice*. Based on Detective LeBlanc's affidavit and testimony, he observed the following sequence of events after he and NOGTF ensured that the CI was not in possession of any currency or contraband: the CI handed currency to Mr. Randolph on the porch of 2836 Philip Street; Mr. Randolph entered the residence at 2836 Phillip Street; another male subject exited the residence; the other male subject handed an unknown item to the CI; the CI traveled to a predetermined location; the CI presented a clear plastic bag containing a substance that the CI informed was "crack cocaine" purchased from Mr. Randolph; and a field test confirmed the presence of crack cocaine. Thus, the district court committed an abuse of discretion in its factual determination that Detective LeBlanc's affidavit was solely based on "the detectives' observations of the heavy flow of pedestrian traffic" and "the information provided by the [CI]." Rather, Detective LeBlanc's affidavit was also based on his own observation of the controlled buy by the CI as described above.

17

It is of no merit that Detective LeBlanc did not include information regarding the CI's reliability or success rate in his affidavit because the search warrant was primarily based on the controlled drug buy as described above and which Detective LeBlanc and Detective Hery set up and observed. *See Hogan*, p. 7, 839 So.2d at 300. Moreover, Detective LeBlanc's affidavit specifically stated that the CI told him that he or she had purchased crack cocaine from Mr. Randolph. *Cf. id.* (affirming a finding of probable cause even though the affidavit did not specify that the confidential informant purchased the narcotics from someone in the residence). We also find no merit to Mr. Randolph's contention that the search warrant was insufficient based on Detective LeBlanc's and Detective Hery's testimony that neither of them actually witnessed Mr. Randolph hand anything to the confidential informant. *See State v. Grey*, 408 So.2d 1239, 1242-43 (La. 1982) (holding that the officers' personal observations of a controlled buy, not the confidential informant's credibility, supported the warrant even though the controlled buy occurred inside the defendant's home, such that the officers did not physically see the exchange of money for the bag of marijuana with which the confidential informant returned). *See also Hogan*, 2002-0924, p. 7, 839 So.2d at 300 (likewise holding that the officers' personal observations of a controlled buy, not the confidential informant's credibility, supported the warrant even though the controlled purchase occurred inside the defendant's home).

Further, to the extent that Detective LeBlanc and Detective Hery did not observe Mr. Randolph's interactions with the CI, they could "rely upon information received through [the CI], rather than upon [their] direct observations," because the CI's statement was "reasonably corroborated by other matters within the[ir] . . . knowledge." *Gates*, 462 U.S. at 242, 103 S.Ct. at 2334.

In particular, Detective LeBlanc explained in his affidavit that he had been surveilling 2836 Philip Street prior to the controlled buy and observed "visits and . . . traffic . . . indicative of narcotic activity," thereby corroborating the CI's statement. Accordingly, we find that the totality of the circumstances herein presented probable cause for the search warrant and that the information supplying the basis for probable cause was contained within the four corners of the affidavit. Additionally, Detective LeBlanc's affidavit established a "continuing nexus between the place sought to be searched" (2836 Philip Street) and "the property sought to be seized" (narcotics). *Casey*, 1999-0023, p. 4, 775 So.2d at 1028 (citing *Weinberg*, 364 So.2d at 968). Thus, the magistrate correctly signed the search warrant, while the district court erred in granting Mr. Randolph's Motion to Suppress.

Moreover, even assuming arguendo that the affidavit was "deficient in some details," this would not necessitate the suppression of the seized evidence. *Hogan*, 2002-0924, p. 7, 839 So.2d at 300 (citing *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3430, 3241, 82 L.Ed.2d 677 (1984)). That is, "a search warrant issued without sufficient probable cause need not be suppressed if the officers who executed it believed it had been validly issued." *Id.* at pp. 7-8, 839 So.2d at 300. Rather, suppression is required in the case of a warrant issued without sufficient probable cause:

> (1) where the magistrate or judge was misled by information the affiant knew was false or would have known was false except for a reckless disregard for the truth, (2) where the issuing magistrate wholly abandoned his detached and neutral judicial role, (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and (4) where the warrant is so facially deficient, i.e., fails to particularize the place to be searched or the things to be seized, that

> the executing officers cannot reasonably presume it to be valid. *Leon*,
> 468 U.S. at 923, 104 S.Ct. at 3421.

*Id.* at p. 8, 839 So.2d at 300. None of these factors exists in this case, and there is no evidence that Detective LeBlanc obtained the warrant in bad faith. Thus, there is no basis to exclude the evidence even if we were to have found any deficiencies in the warrant. In sum, we conclude that the trial court abused its discretion in granting Mr. Randolph's Motion to Suppress.

## DECREE

For the foregoing reasons, we grant the State's writ application; reverse the district court's September 29, 2023 ruling, which granted Mr. Randolph's Motion to Suppress; and remand this matter for further proceedings consistent with this Opinion.

**WRIT GRANTED; JUDGMENT REVERSED; REMANDED**